# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:19-cr-00397-CMA

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. JOEL THOMAS,

     Defendant.

---

## PLEA AGREEMENT

---

The United States of America, by and through Alecia L. Riewerts, Assistant United States Attorney for the District of Colorado, and Lauren S. Kupersmith, Trial Attorney for the Child Exploitation and Obscenity Section of the U.S. Department of Justice, and defendant, Joel Thomas, personally and through counsel, Douglas I. Richards, Richards Carrington, LLC, submit the following Plea Agreement.

## I. PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties understand that any recommendations that a particular sentence or sentencing range be imposed pursuant to this Plea Agreement are not binding on the court.

## A. Defendant's Obligations

### 1. Count of Conviction

The defendant agrees to plead guilty to Count 1 of the Information charging a

1

COURT EXHIBIT
1

violation of 18 U.S.C. § 2252A(a)(5)(B) – Access with Intent to View Child Pornography. The defendant also agrees to admit the Forfeiture Allegation contained in the Information.

### 2. Waiver of Appeal

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 26; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct. Should the plea of guilty be vacated on the motion of the

2

defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and charge the defendant with other violations of law known to the U.S. Attorney's Office for the District of Colorado.

### 3. Defendant's Abandonment of Right, Title, and Claim to Seized Property

The United States of America and the defendant hereby agree that any property subject to forfeiture pursuant to 18 U.S.C. § 2253, seized from the defendant, and currently in the custody and/or control of the Federal Bureau of Investigation (F.B.I.), was properly seized and that such property constitutes evidence, contraband, or fruits of the crimes to which the defendant has pleaded guilty. As such, the defendant hereby relinquishes all claims, title, and interest the defendant has in such property, specifically one Apple Macbook A1181 laptop, serial number W88338KC0P1, to the United States of America with the understanding and consent that the F.B.I., or other appropriate agency, is to destroy the property described above forthwith without further obligation or duty whatsoever owing to the defendant or any other person.

As part of the Plea Agreement in this case, the defendant hereby states under penalty of perjury that the defendant was the sole and rightful owner of the previously referenced property, and that the defendant hereby voluntarily abandons all right and claim to this property.

### 4. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253, whether in the possession or control of the United States or in the

possession or control of the defendant or defendant's nominees, or elsewhere. The

assets to be forfeited specifically include, but are not limited to: one Apple Macbook

A1181 laptop, serial number W88338KC0P1. The defendant agrees and consents to

the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative

forfeiture action. The defendant also hereby agrees that the forfeiture described herein

is not excessive and, in any event, the defendant waives any constitutional claims that

the defendant may have.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any

fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon

the defendant in addition to forfeiture.

### 5. Restitution

Defendant acknowledges that pursuant to 18 U.S.C. § 2259(a), the Court is

required to order restitution for the full amount of the victims' compensable losses as

defined at 18 U.S.C. § 2259(b)(3) and (c) as may be proved by the government or

stipulated to by the parties. Defendant will be required to pay restitution for the full

amount of the victims' losses to all victims of the offense(s) to which defendant is

pleading guilty. For purposes of this paragraph, the term "victim" is defined in 18 U.S.C.

§ 2259(c), and the term "full amount of the victims' losses" is defined in 18 U.S.C.

§ 2259(b)(3). Defendant further understands the amount of loss sustained by each

victim will be determined during the course of preparation of the presentence

investigation report.

The defendant acknowledges that as per 18 U.S.C. § 2259(b)(2)(B), the court

shall order restitution in an amount which is no less than $3,000 per victim.  The defendant agrees that there is a factual basis for the entry of a restitution award in this amount for each victim depicted in the child pornography images posted or accessed with intent to view by the defendant.

Defendant acknowledges that the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source.  Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims.  Defendant understands full restitution will be ordered regardless of defendant's financial resources.  Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea.  Defendant further agrees to comply with any restitution order entered at the time of sentencing.  Defendant agrees to cooperate in efforts to collect the restitution obligation, by any means the United States deems appropriate.  Defendant understands imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.  Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

**B. Government's Obligations**

    **1. Additional Charges**

If the defendant enters an unconditional plea of guilty to Count 1 of the

Information and otherwise fulfills all obligations outlined above, the government agrees

not to charge the defendant with any other violations of law now known to the United

States Attorney's Office for the District of Colorado.

### 2. Sentencing Position

Provided that the guideline range is calculated consistent with or higher than the

estimated range contained in this agreement, the government also agrees to

recommend a sentence of imprisonment that is at the bottom of that range; however,

the government is not bound to recommend any particular term of supervised release.

Should Probation or the Court determine that the guideline range is lower, the

government reserves its ability to seek an upward variance to the extent necessary to

achieve a sentence consistent with the sentencing range calculated in this agreement.

### 3. Acceptance of Responsibility

If the defendant engages in no conduct that otherwise implicates § 3C1.1, the

government agrees that a 3 point reduction in the offense level for acceptance of

responsibility, pursuant to § 3E1.1, is appropriate and agrees to make the appropriate

motion at sentencing.

### C.    Effect of Withdrawal from Plea Agreement

The parties stipulate and agree that the government may unilaterally withdraw

from this Plea Agreement under any of the following circumstances:  1) if the defendant

does not plead guilty to Count 1 of the Information; 2) if the Court does not accept the

defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the

district court or on direct or collateral appeal; 4) if the defendant, at any time after

judgment is entered, obtains dismissal, reversal or remand of the count of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered, the crime of Access with Intent to View Child Pornography, 18 U.S.C. § 2252A(a)(5)(B), are as follows:

*One*:  Defendant knowingly accessed with intent to view any material that contained an image of child pornography;

*Two*:  That the child pornography has been mailed or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer; and

*Three*:  That when the defendant accessed with intent to view the child pornography, he knew it was child pornography.[1]

"Child pornography" is defined as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.[2]

"Sexually explicit conduct" means actual or simulated:

---

[1] 18 U.S.C. § 2252A(5)(B); Eleventh Circuit Pattern Jury Instruction O83.4A (2016) [modified].  The Tenth Circuit does not have a pattern instruction on this crime.
[2] 18 U.S.C. § 2256(8)(A).

1.    sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; or

2.    bestiality; or

3.    masturbation; or

4.    sadistic or masochistic abuse; or

5.    lascivious exhibition of the genitals or pubic area of any person.[3]

### III. STATUTORY PENALTIES

Based on the defendant's criminal history known at this time, the applicable maximum statutory penalty for a violation of 18 U.S.C. § 2252A(a)(5)(B) is not more than 10 years imprisonment, not more than a $250,000 fine, or both. 18 U.S.C. § 2252A(b)(2). Pursuant to 18 U.S.C. § 3583(k), because the defendant is pleading guilty to violating 18 U.S.C. § 2252A, the term of supervised release is not less than 5 years and up to a term of life. Defendant will also be required to pay a $100 special assessment fee.

The parties do not believe the following provision is applicable, but if the defendant has been previously convicted under Chapter 110, 71, 109A, 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, the penalty for a violation of 18 U.S.C. § 2252A(a)(5)(B) is not less than 10 years nor more than 20 years

---

[3] 18 U.S.C. § 2256(2)(A).

imprisonment, not more than $250,000 fine or both.

## IV.    COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the right to possess firearms, vote, hold elected office, and to serve on a jury. If the defendant is not a United States citizen, this conviction will result in the defendant's removal from the United States once he has completed any sentence of imprisonment.

### A. Future Violations of Supervised Release

If supervised release is imposed, a violation of any conditions of probation or supervised release may result in a separate prison sentence and additional supervision. If a condition of release is violated, the defendant may be sentenced to up to 2 years without credit for pre-release imprisonment or time previously served on post-release supervision.

### B. Registration under the Sex Offender Registration and Notification Act

The defendant has been advised and he understands that under the Sex Offender Registration and Notification Act, a federal law, and pursuant to 18 U.S.C. § 3583(d), upon his release from prison and as a condition of his supervised release, if any, he will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout his life. The defendant understands he must register as a sex offender and must keep the registration current with the state sex offender registration agency in each of the following jurisdictions: where he was convicted, where he resides, where he is employed, and where he is a student. The defendant understands that the requirements for registration include providing his

9

name, residence address, the names and addresses of any places where he is or will be an employee or a student, and information relating to intended travel outside the United States, among other information. The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which he resides, is an employee, or is a student not later than three business days after any change of name, residence, employment, or student status. The defendant shall comply with requirements to periodically verify in person his sex offender registration information. The defendant has been advised, and understands, that failure to comply with these obligations subjects him to prosecution for violations of applicable state law or 18 U.S.C. § 2250, a federal law, which is punishable by a fine or imprisonment, or both. Defendant further understands that, under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon release from confinement following conviction.

## V. **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to this Plea Agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense(s) of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the Plea Agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein, which do not contradict the facts to which the parties have stipulated, and which are relevant to the guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4, 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision.  In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information."  § 6B1.4 Comm.

The parties agree that the government's evidence would be:

The defendant came to law enforcement attention during the investigation of several anonymous websites linked together through an anonymity network known as "The Onion Router" or Tor.  Tor was originally designed, implemented, and deployed as a project of the U.S. Naval Research Laboratory for the primary purpose of protecting government communications.  It is now available to the public at large.  The Tor network is available to Internet users; it is designed specifically to facilitate anonymous communication over the Internet.  In order to access the Tor network, a user must install computer software that is publicly available, either by downloading software to the user's existing web browser, downloading free software available from the network's administrators, or downloading a publicly-available third-party application.  Using the Tor network prevents someone attempting to monitor an Internet connection from learning what sites a user visits and prevents the sites the user visits from learning the user's physical location.  Because of the way the Tor network routes communication

through other computers, traditional IP identification techniques are not viable.

**A.    "Website 15"**

A website on the Tor network known to law enforcement as "Website 15" was an online bulletin board whose primary purpose was to advertise and distribute child pornography and discuss matters pertinent to the sexual abuse of children. Its true name is known to law enforcement, but investigation into some criminal suspects who were on the website remains ongoing. On or about August 2, 2013, the computer server hosting "Website 15" was seized from a web-hosting facility. Law enforcement agents viewed, examined, and documented the contents of "Website 15." Review of the board activity of the website showed users discussing child pornography as well as posting and sharing such images. The child pornography on the board principally involved lascivious exhibition of the genitalia.

According to statistics posted on the site, "Website 15" contained a total of 3,218 posts, 1,009 topics, 268 total images, and 215 total members as of June 26, 2013. The initial web page revealed a web page that contained numerous computer-animated images and a hyperlink to access the main site. The computer-animated images depicted the "ChildLover logo," an image depicting a butterfly with pink and purple wings which is a symbol used by pedophiles to indicate a non-gender preferential sexual interest in children. Accessing the hyperlink revealed a message board web page with the name of "Website 15." Located directly to the left of the title were images which appeared to depict child pornography and child erotica of prepubescent males and females. There were

no images depicting adults. Located below the title was text explaining that "Website 15" is open for new members by "Invite Only" and "[t]herefore, if you wish to join the best little board in Torland, you will need to be recommended by someone who is already a member." The text also explained:

> ALL NEW MEMBERS are required to post within 14 DAYS OF ACCOUNT ACTIVATION. By post we mean, a picture set, or a video . . . We regularly DELETE NON-POSTING members . . . Therefore, please only join if you are prepared to become an active poster, and ONLY recommend people that you are certain will actually post to the board – your continued account depends on it! As you post, and at the discretion of admin, your status will change and as it does so, greater access and privileges are afforded to, such as the mini-chat, access to the galleries where you can create a personal album, and our hidden section such as "AREA 51" . . .

As noted above, "Website 15" operated on the Tor network, available to Internet users that is designed specifically to facilitate anonymous communication over the Internet. Websites that are accessible only to users within the Tor network can also be set up within the network. "Website 15" was one such website. A user can only reach such websites if the user is operating in the Tor network. Even after connecting to the Tor network, however, a user must have known the exact web address of such a website in order to access it. Websites on the Tor network are not indexed in the same way as websites on the traditional Internet. Accordingly, unlike on the traditional Internet, a user cannot simply perform a Google search for the name of "Website 15" to obtain the web address for "Website 15," and click on a link to navigate to "Website 15." Rather, a user might have obtained the web address for "Website 15" directly from other users of "Website 15," or from online postings describing both the sort of content available on "Website 15" and its location. Accessing "Website 15" therefore required

13

numerous affirmative steps by the user, making it extremely unlikely that any user could have simply stumbled upon "Website 15" without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

**B.    "Website 18"**

A website known to law enforcement as "Website 18" was an online bulletin board whose primary purpose was to advertise and distribute child pornography. Its true name is known to law enforcement, but investigation into some criminal suspects who were on the website remains ongoing. On or about August 2, 2013, the computer server hosting "Website 18" was seized from a web-hosting facility. Law enforcement agents viewed, examined, and documented the contents of "Website 18."

According to statistics posted on the site, "Website 18" contained a total of 70,648 posts, 14,900 total topics, and 945 total members as of June 25, 2013. The initial web page contained the title of the site and a computer-animated image depicting two prepubescent children. Located below the title was an area to register and sign into the site. Users were required to submit applications to be approved for Website 18, post at least once every 30 days, and meet a specified data threshold to be upgraded to accounts with greater accesses and privileges.

"Website 18" also operated on the Tor network. Accessing "Website 18" therefore required numerous affirmative steps by the user, making it extremely unlikely that any user could have simply stumbled upon "Website 18" without first understanding its content and knowing that its primary purpose was to advertise and distribute child pornography.

**C.    Anonymous E-mail Server**

The Anonymous E-mail Service, hereinafter "AES", was a free, anonymous e-mail service provider that operated as a website on the Tor network. Its true name is known to law enforcement, but investigation into some criminal suspects who used that service remains ongoing. E-mail accounts on the AES e-mail server contained a username followed by the suffix @AES.net or @AES.org. This e-mail service was frequently used by individuals engaged in criminal activity, including users of "Website 15" and "Website 18," to avoid detection by law enforcement because it allowed users to conceal their true identities and geographic locations. The AES website contained a tab where a user could set up a free AES account by creating a unique log-in name and password, as well as links to software programs a user could use to access and use their AES account. It was clearly noted on the open Internet and the Tor network home pages for the AES that AES did not respond to any legal process nor did it solicit, keep or create any records about any of its users. On or about August 2, 2013, the computer server hosting AES was seized by law enforcement agents from a web-hosting facility, at which time AES ceased to operate. The content of the AES e-mail account described below and later identified to belong to Defendant was obtained via a search warrant.

**D.    "BUKETGRL"**

On May 29, 2012, the user "buketgrl" registered an account on "Website 15." That user included in his registration an AES e-mail account. The username for this AES account was "buketgrl1@[AES].org." Between May 29, 2012, and August 5, 2013, "Website 15" user "buketgrl" made a total of 119 postings with 78 attachments, sent 21

private messages, and received 18 private messages.  Examples of these posts and/or

private messages are as follows:

- On June 4, 2012, the user "buketgrl" made a post stating, among other things, "Hey Forum, A little about me, I've been collecting since the 90's, however, I had to destroy three drives in the past and re-build my collection due to fear and paranoia, however, with the true crypt and the size of drives, I can have my entire collection on one device now.....My favorite sets are the YVM, LSM 1st studio, webcam of girls 9-14, and of course the classics....Mail – buketgrl1@[AES].org."

- On June 10, 2012, the user "buketgrl" made a post stating, "Hey everyone...I was going thru my collection and decided it needed to be re-organized... How do you keep your files organized...for instance, I have a folder of To Sort, Cream Pie, Boys, PTHC[4], SCCP, Stories, Pics, etc...now some of my folders are getting dis-organized, such as To Sort and Pics...How do you sort yours...do you go as deep as date, age, year, etc...Let us know and maybe we can be more efficient on what is requested and posted....Thanks."  Attached to the post was one image depicting a naked prepubescent female who was sitting on her knees with her legs spread apart, partially exposing her vagina.  The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On September 18, 2012, the user "buketgrl" made a post in response to the thread titled, "QT of the day – 17th Sept" stating, "Here is mine . . .why not???"  Attached to this post was one image depicting a prepubescent female previously identified by law enforcement wearing only a t-shirt, lying on her back with her legs spread exposing her vagina.  The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On September 24, 2012, the user "buketgrl" made a post with the subject line "QT of the Day – Sept 24th" stating, "Mine after a long weekend!!!!"  Attached to this post was one image depicting a prepubescent naked female previously identified by law enforcement lying on her back on a couch with her legs spread exposing her vagina.  The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.  Another user replied to this post stating, "That looks like Cat Goddess . . . new to me!  Is it a series?" to which "buketgrl" replied, "got them off of a chat BBS . . .so I shared a little . . . thanks [other user]."

- On March 6, 2013, the user "buketgrl" made a post stating, "A little one for you."

---

[4] PTHC stands for "pre-teen hard core", indicating that the child pornography depicts a prepubescent minor is engaged in one or more sex acts with one or more other minors or adults.

16

Attached to this post was one image depicting two prepubescent females. One of the females was naked lying on her back, slightly upright, with her legs spread apart and bent at the knees, exposing her vagina and anus. The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On April 23, 2013, the user "buketgrl" made a post stating, "Thanks for playing and surf safe." Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password. Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female. An example of these images depicts a naked early pubescent female lying on her back in a purple chair with her legs spread apart and raised in the air, exposing her vagina and anus. As such, many of these images depict the lascivious exhibition of the genitals and pubic area of the minor victim.

- On June 19, 2013, the user "buketgrl" made a post stating, "here we go...almost done with what I have of Polina!!!" Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password. Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female. An example of these images depicts a naked early pubescent female lying on her back on a table with her legs spread apart and raised in the air, exposing her vagina and anus. The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

- On July 2, 2013, the user "buketgrl" made a post stating, "Coming up to the last few I have...I know I know we have all seen her, but she is a cutie but this would complete all that I have with one more coming later...If you have more, please fill the rest of her series. Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password. Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female. An example of these images depicts a naked early pubescent female sitting on a countertop with her legs spread apart and bent at the knees, exposing her vagina and anus. The image depicts the lascivious exhibition of the genitals and pubic area of the minor victim.

On September 6, 2012, the user "buketgrl" registered an account on "Website 18." The user included in his registration an AES e-mail account. The username for this AES account was "buketgrl1@[AES].net." The profile image associated with the user account, also known as the user's avatar, was an image depicting a naked pre-

pubescent female doing a handstand with her legs spread apart, exposing her vagina. Between September 6, 2012, and August 5, 2013, "Website 18" user "buketgrl" made a total of 54 postings on "Website 18." Examples of these posts are as follows:

- On November 8, 2012, the user "buketgrl" made a post stating, "Here is a cutie!!!!!" Included with the post was a hyperlink to an external website that appeared to contain a file that was no longer accessible, along with a password.

- On December 6, 2012, the user "buketgrl" made a post stating "Looking for this set, or name of the set so I can get it myself. Thanks for the help friends!!!" Included with the post were two hyperlinks to external websites on the Tor network that appeared to contain an image each that was no longer accessible.

On September 5, 2013, a federal search warrant issued by the District of Maryland was executed on the account "buketgrl1@[AES].org." The results were then obtained on September 6, 2013, and September 12, 2013. A review of these results revealed approximately 93 e-mails in the account, dated from June 7, 2012, through August 1, 2013. On June 20, 2012, the user of "buketgrl1" received an e-mail from service@paypal.com. The name associated with the "buketgrl1" account was "Joel Thomas". Among other things, this e-mail contained a receipt for a $15.00 payment to the website http://www.ishareupload.com on June 20, 2012.

On the same day of June 20, 2012, the user of "buketgrl1" received an email from "Help@ishareupload.com" stating that a payment of $15.00 was received and processed successfully. The email also indicated that an account for "buketgrl1@[AES].org" was established at ishareupload.com with the Login name of "buketgrl" and the password "fa1rdriv."

**E.      IDENTIFICATION OF JOEL THOMAS as "BUKETGRL"**

A review of subpoena results from PayPal in regards to the e-mail account

"buketgrl1@[AES].org" identified the Defendant at an address in Aurora, Colorado as the PayPal account holder.  The IP address utilized to access the account in June 2012 geolocated to Aurora, Colorado and was assigned to the Internet Service Provider, Comcast Communications.  At that time, the Defendant subscribed to Comcast at the same address in Aurora, Colorado that was associated with the PayPal records.  The Defendant was also connected to that address through publicly available databases, Arapahoe County Property Records, and Colorado Department of Motor Vehicles.

In November 2013, the Defendant was living at a different Aurora, Colorado address which was connected to him through publicly available databases and physical surveillance.  On November 25, 2013, a federal search warrant was executed by the F.B.I. at the defendant's new home address in Aurora, Colorado and several digital devices belonging to the Defendant were seized.

**F.      COMPUTER FORENSIC ANALYSIS**

As part of the search in November 2013 at the Defendant's residence, an Apple Macbook laptop computer was seized and a forensic examination was conducted.  That computer had a password of "fa1rdriv", the same password used by "buketgrl1@[AES].org" with the login name "buketgrl" for the website ishareupload.com. Forensic evidence revealed that Joel Thomas was the user of the Macbook in several ways, including the following:

- The "admin account" associated with the Macbook was in the name "Joel Thomas"

- The system configuration file specified the domain name as "Jthomas Macbook"

- The historical system log file showed previously assigned names, such as "Joels-

Macbook" and "joel-thomas-macbook"

- There was a Macbook "Stickies" database file[5] under the admin user of the Macbook that contained several notes pertaining to the Defendant, including a gmail address with his name, frequent flyer and other membership numbers, as well as accounts associated with the Defendant.

Two significant sized encrypted containers were located on the Macbook, one 30 gigabytes and one 10 gigabytes, both of which had been accessed by the computer user multiple times. Due to the level of encryption, those containers could not be accessed by the forensic examiner. Additionally, CCleaner, a commercial product permitting the secure deletion of files and removal of remnant data was installed and all cleaning features were enabled. However, other forensic evidence revealed that the Defendant utilized the Macbook to access "Website 15" and "Website 18" with the intent to view child pornography, including the following:

- QuickLook Cache is part of the Mac user interface that is used to create thumbnail images and previews of file content for the Mac program called Finder. QuickLook stores metadata information about the files encountered and data is recorded when a file is previewed. Files similar in name and size which were uploaded by "buketgrl" to "Website 15" were found in the QuickLook cache entries on the Macbook. Specifically, 47 of the 78 files that were uploaded to "Website 15" by "buketgrl" were identical in file name and size entries in QuickLook cache on the Macbook. Seventeen of the matched files were uploaded by "buketgrl" within one hour of the corresponding file being modified on the Macbook.

- There was a Stickie note file which contained text that was identical to a post by "buketgrl" on "Website 18", created hours before the post appeared on Website 18 on April 4, 2013. The note and the post contained links to a website which hosts files, which was a website frequently used by "buketgrl" to share files on "Website 15". There were 20 similar hyperlink posts by "buketgrl" on "Website 15" from September 6, 2012 through June 19, 2013.

---

[5] The Macbook Stickies application allows users to record notes and other data on the digital equivalent of Post-it notes.

- There was a Stickie note with the true name and address of "Website 15" and "Website 18", including a line which stated "name – Buketgrl" for both and then "pass" with a different password for each. The password listed for "buketgrl" on "Website 15" was a version of the password used to access the Macbook and ishareupload.com.

- On June 14, 2012, "buketgrl" sent a private message to another user through "Website 15", which asked the other user to share the entire series of a particular set that the other user posted earlier in the day. "Buketgrl" also asks the other user about a particular peer-to-peer file sharing program and asks if there is "anything I should know about it as for trust and security." Twenty-eight minutes earlier that particular peer-to-peer file sharing program was installed on the Macbook.

Further, forensic evidence revealed that the Defendant used the Macbook to view and access child pornography and child erotica in several ways, including the following:

- QuickLook entries showed that the Macbook was used to view a variety of images and videos with file names indicative of child pornography, including 606 entries with files or folder names including the term "PTHC," which stands for "preteen hard core" and as noted above is a common name associated with child pornography depicting sexual acts involving prepubescent minors. An additional 233 QuickLook entries showed files were accessed that included the name "pedo." The metadata associated with several of these files revealed that they were currently or had been stored on the encrypted container contained on the Macbook, which could not be accessed by the forensic examiner due to the level of encryption.

- There was a Stickie note which contained the true name and web address of other websites on the the Tor network known to be devoted to the advertisement and distribution of child pornography.

- An image viewer program, which stores a text listing of files viewed by the slideshow feature of the Macbook showed file names indicative of child pornography were viewed on the Macbook.

- Child erotica thumbnails were recovered from a Windows 7 Virtual Machine installed on the Macbook.

21

Copies of files depicting child pornography associated with the Defendant's postings to Website 15 were provided to the National Center for Missing and Exploited Children (NCMEC). NCMEC reports that several of the image files associated with the Defendant depict minor victims previously identified by law enforcement. Most of the images depicting identified minor victims were produced outside the state of Colorado. The government is not aware of any evidence that the Defendant produced child pornography appearing on Website 15 or Website 18.

Defendant admits that the images and videos he accessed with intent to view on Websites 15 and 18, were child pornography as defined in 18 U.S.C. § 2256(8)(A); that he knew they were child pornography when he accessed and viewed them; that the material involved minors who had not attained the age of 12 years; that the defendant distributed child pornography in exchange for valuable consideration, namely access to other child pornography; that he used a computer to commit the offense; that the offense involved at least 10 images but fewer than 150 images; and that the child pornography had been mailed or had been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, when the defendant accessed and viewed the child pornography in Colorado.

## VI. ADVISORY GUIDELINE CALCULATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing

range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. Although the government is obligated to make a sentencing recommendation tied to the offense level of 26, as set forth in the Plea Agreement section above, the parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

**Offense Level**: Under § 2G2.2, the base offense level for this offense is **18**. § 2G2.2(a)(1).

A. Because the pornographic material involved a prepubescent minor or minors who had not attained the age of 12, there is an increase of **+2** levels. § 2G2.2(b)(2).

B. Because the defendant distributed in exchange for any valuable consideration, but not for pecuniary gain, there is an increase of **+5** levels. § 2G2.2(b)(3)(B).

C. Because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, there is an increase of +**2** levels. § 2G2.2(b)(6).

D. Because the offense involved at least 10 images but fewer than 150, there is an increase by **+2** levels. § 2G2.2(b)(7)(A).

E. No victim-related, role-in-offense, obstruction and/or multiple count adjustments apply.

23

F. Defendant should receive a decrease in the offense level by **-2** based upon his acceptance of responsibility. § 3E1.1(a). Defendant should also receive a decrease in the offense level by **–1** for timely notifying the government. § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction.

G. The adjusted offense level is **26**.

**Criminal History Category**

H. The parties acknowledge and agree that the estimation regarding Defendant's criminal history is tentative. Defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court. Defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding Defendant's criminal history, the parties believe that Defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

I. The career offender and repeat and dangerous sex offender adjustments tentatively do not apply. § 4B1.1; § 4B1.5.

**Guideline Ranges**

J. The guideline range resulting from the estimated offense level of **26** and the estimated criminal history category of I is **63** to **78** months imprisonment. However, the imprisonment range could be from **63** months (bottom of CHC I) to **150** months (top of CHC VI). The guideline range would not exceed, in any case, the statutory maximum of **120** months applicable to the count of conviction.

K. Pursuant to § 5E1.2, assuming the estimated offense level of **26**, the fine range for this offense would be $25,000 to $250,000, plus applicable interest and penalties.

L. Pursuant to 18 U.S.C. § 3583(k) and § 5D1.2(b)(2), if the Court imposes the term of supervised release, that term shall be at least 5 years but not more than life.

## VII.  **ENTIRE AGREEMENT**

This document states the parties' entire agreement.  There are no other promises, agreements, (or "side agreements"), terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: _10/2/19_

Joel Thomas
Defendant

Date: _10/2/19_

Douglas I. Richards
Attorney for Defendant

Date: _10/2/19_

Alecia L. Riewerts
Assistant U.S. Attorney
District of Colorado

Date: _10/2/19_

Lauren S. Kupersmith
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice