**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:19-cr-00397-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1.     JOEL THOMAS,

        Defendant.

_____

**GOVERNMENT'S AMENDED SENTENCING STATEMENT**
_____

        The United States of America, by and through United States Attorney Jason R. Dunn for the District of Colorado, and Alecia L. Riewerts, Assistant United States Attorney, and Lauren S. Kupersmith, Trial Attorney, hereby submits this Sentencing Statement in support of the government's request that the Court sentence the defendant to 63 months imprisonment. This sentence is a fair and just sentence and takes into consideration all of the circumstances of this case, including the factors delineated in 18 U.S.C. § 3553(a) and the defendant's acceptance of responsibility.

    **I.**    **THE UNITED STATES SENTENCING GUIDELINES**

        The United States Sentencing Guidelines are advisory, but they remain "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing

factors and objectives outlined in 18 U.S.C. § 3553(a).  *Id.* at 49-50.  "A sentence is substantively reasonable when the length of the sentence reflects the gravity of the crime and the § 3553(a) factors as applied to the case." *United States v. Martinez-Barragan*, 545 F.3d 894, 905 (10th Cir. 2008).

On October 2, 2019, the defendant entered a plea of guilty to one count of Access with Intent to View Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Both the defendant and the government agree that the adjusted offense level under the sentencing guidelines is 26.  Probation similarly calculated the defendant's adjusted offense level.  Draft Presentence Investigation Report [ECF #18], filed on December 10, 2019 ("PSR"), at 13.  Since the defendant falls within Criminal History Category I, the resultant advisory sentencing guideline range as calculated by the parties is 63 to 78 months imprisonment.  The defendant pled guilty pursuant to an agreement under Fed.R.Crim.P. 11(c)(1)(B), the terms of which provide that the government will seek a sentence at the bottom of the guidelines range as calculated by the parties.

Given the defendant's pattern of behavior and attempts to conceal his systematic sexual exploitation of minors online, the United States respectfully requests that this Court sentence the defendant to 63 months, which is consistent with Probation's recommendation.  The defendant has earned this sentence given the breadth of his actions.  A sentence of 63 months imprisonment constitutes a reasonable sentence that comports with the requirements of 18 U.S.C. § 3553(a).

## II.   DISCUSSION OF THE 18 U.S.C § 3553(a) FACTORS

The factors to be considered under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the need

for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and afford adequate deterrence to criminal conduct, the need to protect the public from future crimes of the defendant, and the need to avoid unwarranted sentence disparities.

### A. Nature and Circumstances of the Offense

The facts of the defendant's crime and pattern of activity are well documented in the Stipulation of Facts in the Plea Agreement [ECF #16] ("PA") and in the PSR.

Between May 2012 and August 2013, the defendant was anonymously registered on two different websites that operated on Tor, a network specifically designed and used for the purpose of facilitating anonymous communication over the internet. The primary purpose of both websites (known to law enforcement as "Website 15" and "Website 18") was to advertise and distribute child pornography. Not only would users of these websites join for the specific purpose of anonymously sharing each other's child pornography, but the rules (for at least Website 15) dictated that they had to continuously share or they would lose access to the website, and therefore, the material from other members. The defendant was an active contributor and consumer on both sites.

On Website 18, the defendant made a total of 54 posts in a period of less than a year. Several of the posts included hyperlinks to external websites where the file was no longer accessible by the time law enforcement seized the websites, but the language of the posts made clear that the defendant was both sharing links to child pornography and requesting particular files to be sent in return. For example, on December 6, 2012, the defendant included a hyperlink to a file-sharing site on Tor and stated, "Looking for this set, or name of the set so I can get it myself. Thanks for the help friends!!!!" On November 8, 2012, the defendant posted a hyperlink to an outside site, along with a password and

3

stated, "Here is a cutie!!!!" The profile image associated with the defendant's user account was itself a child pornography image, specifically an image depicting a naked prepubescent female doing a handstand with her legs spread apart, exposing her vagina. Because this was his profile image, the image would be shared every time the defendant made a posting or sent a message.

On Website 15, over approximately fourteen months, the defendant made a total of 119 postings with 78 attachments, and sent or received 39 private messages. His postings discussed his extensive collection of child sexual exploitation material, shared specific child pornography from his collection with the other approximately 215 users, and requested particular child pornography files to add to his collection, sometimes requesting images of a distinct minor victim.

On Website 15, the defendant often participated in posting strings called "QT of the day – [particular date]" where members would highlight a favorite image or video of child sexual exploitation material for that day, in the process encouraging others to do the same. For example, in the posting string for "QT of the day – 17th Sept," the defendant posted, "Here is mine . . . why not???" attaching an image depicting a prepubescent female lying on her back with her legs spread exposing her vagina. PA, at 16. The following week for the post "QT of the day – Sept 24th," the defendant posted, "Mine after a long weekend!!!!" attaching an image depicting a different prepubescent female lying naked on her back on a couch with her legs spread exposing her vagina. *Id.* On other occasions, the defendant made posts under different subject lines attaching different child pornography images. *See, e.g.,* PA, at 16-17 (describing examples of such posts on March 6, 2013 and April 23, 2013).

4

Users of Website 15, including the defendant, would often thank each other for the material posted and callously discuss the trading of depictions of child sexual exploitation like some might discuss the trading of their favorite baseball cards.  For example, in response to his September 24, 2012 post, another user asked the defendant if what he posted was a series and he replied, "got them off of a chat BBS . . . so I shared a little . . . thanks [other user]."  PA, at 16.  "BBS" stands for "Bulletin Board System," which was part of a different type of online community often used to share child pornography material that predates Tor.  On June 19, 2013, the defendant made a post stating, "here we go . . . almost done with what I have of [Series Name]!!!!"  *Id.* at 17.  Attached to the post was one image containing 15 smaller images that appeared to be still-shots of a video depicting an early pubescent female, including images that depicted her naked lying on her back on a table with her legs spread apart and raised in the air, exposing her vagina and anus.  *Id.*  Just a few weeks later, on July 2, 2013, the defendant made a post stating, "Coming up to the last few I have . . . I know I know we have all seen her, but she is a cutie but this would complete all that I have with one more coming later . . . If you have more, please fill the rest of her series."  *Id.*  Attached to this post was a similar collection of still-shots of a video of a minor female, which included images of her naked sitting on a countertop with her legs spread apart and bent at the knees, exposing her vagina and anus.  *Id.*

The insensitive and casual way the defendant would share and discuss the child sexual exploitation material on the websites stands in stark contrast to the impact this sharing had on the victims.  As articulated by just one of the victims of defendant's actions, the repeated sharing of these images represents "ongoing abuse" to the individuals

5

depicted. PSR, Att. B, at 10. In her victim impact statement, "Henley," as she chooses to be known, described how the "devastating effects of the ongoing circulation of my sex abuse images" impacts her daily living, job prospects, personal safety, and mental health. *Id.* at 10-11. "It is like constantly having a scab ripped off a wound that is trying to heal." *Id.* at 10. The defendant's participation in the circulation of her images contributed to the repeated pulling off of that scab and the victim's inability to fully heal from the abuse she endured and the exploitation she continues to endure. "Henley's" experience and her struggle with the repercussions of her images being shared likely echo the other victims that the defendant exploited, many of whom remain unidentified.

### B. History and Characteristics of the Defendant

The defendant's history and characteristics demonstrate the reasonableness of a 63 month sentence. The defendant reported that he had a "great childhood with parents who were very supportive and always there for him." PSR, at ¶ 61. Both his childhood and adulthood were financially stable and he was always surrounded by opportunities and family support. PSR, at ¶¶ 60-84. While it is admirable that defendant is now seeking mental health treatment, the defendant waited to do this until he was finally faced with the prospect of imprisonment, and did not seek help throughout the multiple decades of child sexual exploitation behavior, including in 2010 and 2013 when law enforcement came to his house due to suspicions of child pornography. PSR, at ¶ 29, 70. The defendant continued to engage in his criminal activity for years after Aurora police first came to his house in 2010 and even after he had a child of his own. The government's sentencing recommendation, which is at the bottom of the advisory sentencing guideline range, takes into account both that the defendant is now accepting responsibility for his actions and

6

that there is no evidence that the defendant has continued to engage in this activity since the federal search warrant was issued in 2013.

Through defendant's own admissions on his website postings, he was engaged in this criminal child sexual exploitation behavior for decades prior to law enforcement seizing his computer in 2013. On June 4, 2012, the defendant posted that he has "been collecting since the 90's." PA, at 16. He stated that he had to destroy hard drives in the past and re-build his collection, but now with larger drives and encryption available, he can have his entire collection on one device. *Id.* He stated his favorite sets include "webcam of girls 9-14, and of course the classics." *Id.* Just a few days later, he made a posting seeking advice from other child pornography collectors asking how to organize his extensive collection and listed at least seven different folder names, including "Cream Pie," "Boys," and "PTHC," a term which stands for "pre-teen hard core," indicating child pornography material that depicts prepubescent minors engaged in sexual acts. *Id.* The forensic examination of the defendant's laptop, which had been used to access the websites, revealed two significantly sized encrypted containers, totaling approximately 40 gigabytes, which the forensic examiner was unable to open. PA, at 20. It is clear that the defendant has a long history of engaging in this behavior and at different times his collection of child sexual exploitation material was extensive.

The defendant appreciated the wrongfulness of his conduct and took steps to conceal his activity online and evade law enforcement through the use of Tor and encryption on his own devices. In order to access the Tor network, a user must install special computer software. Tor is specifically used in order to prevent someone attempting to monitor an Internet connection from learning what sites a user visits and

7

preventing the sites from learning the user's physical location.  Further, both Website 15 and 18, along with all others found on the Tor network, are only accessible by a user who has obtained the specific web address from other users or from online postings describing both the sort of content available on the websites and their location.  In other words, users cannot accidentally stumble upon the websites and their content.  The defendant not only signed up as a user on the websites, but regularly contributed to the content, including discussing the exploitive material, where else to find it, and telling other users to stay "safe."  While the defendant admits that he registered for Websites 15 and 18 to upload and download child pornography (PSR, at ¶ 37), his computer also revealed notes which contained the true name and web address of other Tor network websites known to be devoted to the advertisement and distribution of child pornography.  PA, at 21.

The defendant sought out these dangerous communities on Tor to expand his own collection and encourage others to enhance the community's collection.  For example, in his July 2, 2013 post, he posted what he had of a particular victim and stated, "If you have more, please fill the rest of her series."  PA, at 17.  On April 23, 2013, his post with a link and an attachment of small images told his fellow community members, "Thanks for playing and surf safe."  *Id.*  On December 6, 2012, on Website 18, he made a post along with a link stating, "Looking for this set, or name of the set so I can get it myself.  Thanks for the help friends!!!!"  *Id.* at 18.

The defendant's computer had software which securely deletes files and removes remnant data.  Despite these protections, the forensic examination was able to determine certain ways the defendant used his laptop to access child pornography and child erotica.  For example, the QuickLook entries showed hundreds of entries with file or folder names

8

associated with child pornography, which meant that the defendant had used the computer to access those particular files or folders. PA, at 21. Many of these entries indicated that the files were stored on the encrypted container, including names such as "pthc 2011 dad fuck daughter 12 y.avi" and "(pthc) Kait (4yo) Suck & cum on face.avi." Some of his messages on Website 15 and the forensic artifacts on his computer also revealed that the defendant accessed or attempted to access child pornography through different means, including peer-to-peer software. His successful methods to evade law enforcement for so long and level of computer sophistication reflect the grievous nature of his offending and demonstrate the reasonableness of the 63 month imprisonment recommendation.

### C. Other Sentencing Factors

A term of imprisonment of 63 months addresses the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. Such a sentence would afford adequate deterrence to criminal conduct, protect the public from future crimes of the defendant, and additionally address the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. This sentence recommendation takes into account the defendant's lack of criminal activity since the federal search warrant, but still holds him accountable for the extensive online activity related to the sexual exploitation of minors. Further, it sends an important message that one cannot escape punishment by hiding on the Dark Web or utilizing sophisticated encryption and anonymization techniques. A sentence of 63 months is sufficient, but not greater than necessary, to accomplish all of these goals.

In regard to 18 U.S.C. § 3553(a)(2)(A), a 63 month sentence would provide "just punishment" for his offenses, promote respect for federal child exploitation laws, and reflect the seriousness of his offenses and child pornography offenses in general. The child pornography offenses committed by the defendant are serious. Once distributed over the Internet, images and videos depicting the sexual abuse of a child will circulate in perpetuity because the defendant and individuals like him made a purposeful decision to share their collections with others. The defendant's posts exemplify his part in continuing this circulation and one of his victims has articulated exactly why this is so damaging to the children involved. *See* PSR, Att. B at 10-12. In *New York v. Ferber*, the U.S. Supreme Court noted:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 747, 759 n.10 (1982), *quoting* Shouvlin, *Preventing the Sexual Exploitation of Children: A Model Act*, 17 Wake Forest L.Rev. 535, 545 (1981).

Consumers of child pornography such as the defendant also create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff,* 501 F.3d 250, 259 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"); *United States v.*

*Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007) ("The greater the customer demand for child pornography, the more that will be produced.") (citations omitted).

Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children.  Through distribution of child pornography, offenders like the defendant also enable and encourage the sexual desires of other individuals who may be more dangerous than himself.  Importantly, even if the defendant's conduct were limited to the receipt and possession of child pornography, "[c]onsumers such as [defendant] who 'merely' or 'passively' receive or possess child pornography directly contribute to this continuing victimization"; as such, "the victims are no less damaged for his having remained safely at home, and his voyeurism has actively contributed to a tide of depravity that Congress, expressing the will of our nation, has condemned in the strongest terms."  *Goff,* 501 F.3d at 259.

The defendant's sentence should be lengthy in order to deter the criminal conduct of others.  As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor.  The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced."  *Goldberg*, 491 F.3d at 672.  The criminal conduct at issue is the accessing and sharing of images and videos memorializing the sexual exploitation of children.  Deterrence and protection of the public are critical.  For other offenders who might consider engaging in similar behavior, "[g]eneral deterrence is crucial in the child pornography context."  *United States v. Bistline*, 665 F.3d 758, 767

11

(6th Cir. 2012). A lower or lack of sentence of imprisonment would not accomplish the sentencing factors set forth in 18 U.S.C. § 3553(a).

### III.  CONCLUSION

The Sentencing Commission, Congress, and courts across the country have repeatedly recognized the pain and suffering that the trading of child pornography has inflicted on the children depicted. These children are not abstractions or objects; they are real, innocent, human beings who were sexually exploited in order for these pictures and videos to be produced. Once produced, the callous consumption and sharing of the images by others wishing to enhance their own private collections or use the images to find other like-minded individuals perpetuates the pain and suffering of the victims depicted.

A sentence of 63 months imprisonment, at the bottom of the advisory sentencing guideline range, fairly reflects the factors to be considered under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and afford adequate deterrence to criminal conduct, the need to protect the public from future crimes of the defendant, and the need to avoid unwarranted sentencing disparities.

//

//

//

//

//

//

DATED this 30th day of December 2019.

                                  Respectfully submitted,

                                  JASON R. DUNN
                                  United States Attorney

By:   *s/Alecia L. Riewerts*
       Assistant U.S. Attorney
       U.S. Attorney's Office
       1801 California Street, Suite 1600
       Denver, CO 80202
       Telephone: 303-454-0100
       E-mail: Alecia.Riewerts@usdoj.gov

       *s/Lauren S. Kupersmith*
       Trial Attorney
       Child Exploitation & Obscenity Section
       U.S. Department of Justice, Crim. Div.
       1400 New York Ave. N.W., Suite 600
       Washington, DC 20005
       Telephone: 202-514-5780
       E-mail:  Lauren.Kupersmith@usdoj.gov

       Attorneys for the Government

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of December, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

                                              *s/Portia Peter*
                                              Legal Assistant
                                              United States Attorney's Office
                                              1801 California Street, Suite 1600
                                              Denver, CO 80202
                                              Telephone: 303-454-0100
                                              Email: Portia.peter@usdoj.gov