**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 19-cr-00397-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  JOEL THOMAS,

      Defendant.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
MODIFY SUPERVISED RELEASE CONDITIONS**

---

      The United States of America ("the government"), by and through United States Attorney for the District of Colorado Cole Finegan, and Assistant United States Attorney Alecia L. Riewerts, hereby responds to the defendant's Motion to Modify Supervised Release Conditions [ECF #57] ("Def. Mot. to Mod. SR Cond.") and respectfully requests the Court deny the motion in part, in that it deny the defendant's motion to modify Special Conditions 1, 4, and 6[1] and grant the motion in part, in that it grant defendant's motion to modify Special Conditions 7-11.

---

[1] Defendant specifically references Special Condition 4 in his motion; however, the substance of the motion appears to additionally oppose the imposition of Special Condition 6.  Therefore, in an abundance of caution, the government will address computer monitoring as described in Special Condition 4 generally and "capture of keystrokes" as described in Special Condition 6 specifically.

1

I.    **BACKGROUND**

Between May 2012 and August 2013, the defendant was anonymously registered on two different websites that operated on Tor, a network designed and used for the purpose of facilitating anonymous communication over the Internet. The primary purpose of both websites (known as "Website 15" and "Website 18") was to advertise and distribute child pornography. Further, the rules for at least Website 15 dictated that users had to continuously share or they would lose access to the website. The defendant was an active contributor and consumer on both sites.

On Website 18, the defendant made a total of 54 posts in a period of less than a year.  Plea Agreement [ECF #19] ("PA") at 17-18.  Some of the posts included hyperlinks to external websites where the file was no longer accessible by the time law enforcement seized the websites, but the language of the posts made clear that the defendant was both sharing links to child pornography and requesting particular files to be sent in return.  *Id.* at 18.  For example, on December 6, 2012, the defendant included a hyperlink to a file-sharing site on Tor and stated, "Looking for this set, or name of the set so I can get it myself. Thanks for the help friends!!!!".  On November 8, 2012, the defendant posted a hyperlink to an outside site, along with a password and stated, "Here is a cutie!!!!".  *Id.*

On Website 15, over approximately fourteen months, the defendant made a total of 119 postings with 78 attachments and sent or received 39 private messages.  *Id.* at 15-16.  His postings discussed his extensive collection of child sexual exploitation

material, shared specific child pornography from his collection with the other

approximately 215 users, and requested particular child pornography files to add to his

collection, sometimes requesting images of a distinct minor victim. *Id.* at 12, 16-17.

Users of Website 15, including the defendant, would often thank each other for

the material posted and callously discuss the trading of depictions of child sexual

exploitation like some might discuss the trading of their favorite baseball cards. For

example, on June 10, 2012, the defendant made a post stating, "Hey everyone...I was

going thru my collection and decided it needed to be re-organized... How do you keep

your files organized...for instance, I have a folder of To Sort, Cream Pie, Boys, PTHC[2],

SCCP, Stories, Pics, etc...now some of my folders are getting dis-organized, such as To

Sort and Pics...How do you sort yours...do you go as deep as date, age, year, etc...Let

us know and maybe we can be more efficient on what is requested and

posted....Thanks." Attached to the post was one image depicting a nude prepubescent

female who was sitting on her knees with her legs spread apart, partially exposing her

vagina. *Id.* at 16.

The defendant had been collecting child pornography for a lengthy period of time.

On June 4, 2012, the defendant made a post stating, among other things, "Hey Forum,

A little about me, I've been collecting since the 90's, however, I had to destroy three

drives in the past and re-build my collection due to fear and paranoia, however, with the

---

[2] PTHC stands for "pre-teen hard core", indicating that the child pornography depicts a prepubescent minor is engaged in one or more sex acts with one or more other minors or adults.

true crypt and the size of drives, I can have my entire collection on one device now…..My favorite sets are the YVM, LSM 1st studio, webcam of girls 9-14, and of course the classics". *Id.* at 16. In fact, the defendant continued to engage in his criminal activity after the police first came to his home in 2010 and even after he had a child of his own. Presentence Investigation Report [ECF #25] ("PSR") at ¶¶29, 62.

It was clear based on the forensic examination that the defendant had taken steps to avoid law enforcement detection, including encrypting his laptop. The forensic examination of the defendant's laptop, which had been used to access the websites described above, revealed two significantly sized encrypted containers, totaling approximately 40 gigabytes, which the forensic examiner was unable to open. PA at 20-21. Also, a commercial product permitting the secure deletion of files and removal of remnant data was installed and all cleaning features were enabled. PA at 20.

Defendant pled guilty to an Information charging him with Access with Intent to View Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). PSR at ¶1. The Court sentenced him to 48 months' imprisonment. Judgment [ECF #33] at 2. His sentence includes five years of supervised release with conditions, to include special conditions of supervision. *Id.* at 3-5. The defendant filed a motion to modify the special conditions of supervision on March 14, 2022. Def. Mot. to Mod. SR Cond.

## II. DEFENDANT'S REQUEST FOR MODIFICATION OF THE CONDITIONS OF SUPERVISED RELEASE

The defendant's request for modification of the special conditions of supervised release should be denied in part and granted in part, as further described below.

"District courts have broad discretion to impose conditions of supervised release," as long as those supervised release conditions are consistent with the statutory requirements of 18 U.S.C. § 3583(d) and "comport with the relevant constitutional provisions." *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011) (citation omitted). A supervised release condition "must satisfy both § 3583(d)(1) (requiring reasonable relationship to the [enumerated] § 3553 factors) and § 3583(d)(2) (involve no greater deprivation of liberty than necessary)"; however, each condition "does not need to be reasonably related to *all* of the [enumerated] factors in § 3553." *United States v. Hahn*, 551 F.3d 977, 983 (10th Cir. 2008) (citation omitted) (emphasis added). Further, the conditions must be "consistent with any pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d)(3).

While "[t]he district court is required to give reasons on the record for the imposition of special conditions of supervised release," the court need not make "specific factual findings." *Id.* at 982 (citation omitted). A "generalized statement of its reasoning" is sufficient. *Id.* at 982-983 (citation omitted). The Court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e). As the supervised release conditions imposed by the Court at sentencing meet both statutory and constitutional requirements and do not conflict with any pertinent policy statements, the government respectfully requests that the defendant's motion be denied

as to Special Conditions 1, 4, and 6.  The government has no objection to the Court

granting the defendant's motion to modify Special Conditions 7-11.

### A.  Special Condition 1: Sex Offender Evaluation and Treatment

Special Condition of Supervision 1 requires in part that the defendant "participate

in and successfully complete a sex-offense specific evaluation and/or treatment

program as approved by the probation officer." Judgment at 5.  The defendant argues

that he does not need sex offender evaluation and treatment since he has been

involved in and intends to continue to be involved in Sex Addicts Anonymous (SAA) and

because there is "no indication or suggestion in the Defendant's PSR that reflects the

need for additional treatment."  Def. Mot. to Mod. SR Cond. At 11-12.

The defendant collected and distributed child pornography and was an active

participant in communities of pedophiles that covet images of child sexual exploitation.

There is no question that sex offender evaluation and treatment is reasonably related to

the nature and circumstances of the offense based upon the stipulated factual basis in

the Plea Agreement.  PA at 11-22.

The defendant's history and characteristics likewise call for sex offender

evaluation and treatment.  The defendant submitted a "Offense Specific Evaluation" in

advance of his sentencing in this case.  ECF #27-1.  The evaluation provided the

evaluator's recommendations regarding sex offense specific treatment.  *Id.* at 16.

Notably, the defendant has had the opportunity to participate in sex offender

treatment while in the Bureau of Prisons (BOP).  A review of the defendant's Inmate

Profile reflects that the defendant declined treatment in the program on February 19, 2020.  *See* BOP Inmate Profile, Exhibit 5 [ECF #45-5].  Undersigned counsel confirmed on March 24, 2022, with Paulette Couf, Psy.D., the Sex Offender Management Program Coordinator at FCI Englewood, that the defendant has not requested to participate in sex offense specific treatment since his February 2020 declination.  The defendant does not appear to recognize the importance of his participation in a standardized sex offender treatment program.  Participation in sex offender treatment is a critical mechanism for ensuring the safety of the community.

Sex offender treatment and evaluation is consistently ordered for child pornography offenders in this district as a special condition of supervised release.  The Tenth Circuit has even upheld the sex offender evaluation and treatment condition in cases where the offense of conviction wasn't a sex crime.  For example, in *Mike* the offense of conviction was a 2006 assault.  The Tenth Circuit affirmed the condition of supervised release that the defendant "immediately undergo a psychosexual evaluation upon release and begin participating in sex offender treatment, consistent with the recommendations of the psychosexual evaluation, and furthermore, the defendant shall submit to clinical polygraph testing and any other specific sex offender testing, as directed by the probation officer" based on a 1997 sex offense conviction.  *Mike*, 632 F.3d at 690, 695-697.

Further, sex offender treatment is recommended for individuals convicted of sex offenses by the U.S. Sentencing Commission, which has studied the issue at length.

U.S.S.G. § 5D1.3(d)(7).  Specifically, as part of the "Special Conditions (Policy Statement)", the advisory sentencing guidelines recommend "[a] condition requiring the defendant to participate in a program approved by the United States Probation Office for the treatment and monitoring of sex offenders."  *Id.*

The government's position is that there is ample evidence in the record to support sex offender evaluation and treatment.  The nature and circumstances of the case are the same as when the defendant's sentence was imposed in January 2020. The history and characteristics of the defendant are the same as when sentence was imposed.  There were no objections to Special Condition 1 at that time.  Sex offender evaluation and treatment involves no greater deprivation of liberty than necessary to ensure the safety of the community. Therefore, the defendant's motion to modify this condition should be denied.

**B.  Special Conditions 4 and 6:  Computer Monitoring**

Special Condition of Supervision 4 requires in part that the defendant's "use of computers and Internet capable devices will be limited to those [he requests] to use and which the probation officer authorizes.  The probation officer must not prohibit lawful Internet use except to impose restrictions on the types of computers or Internet capable devices that [the defendant] may use, to provide necessary restrictions to facilitate correctional treatment and rehabilitation, and to protect the public from any further crimes". Judgment at 5.  Special Condition of Supervision 6 allows the installation of "software/hardware designed to monitor computer activities on any computer [the

defendant is] authorized by the probation officer to use" and provides that the "software may record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations."  *Id.*  The defendant argues that these conditions impinge unlawfully on his liberty interests.  Def. Mot. to Mod. SR Cond. At 13-17.

The nature and circumstances of the offense conduct necessitate computer monitoring, including keystroke monitoring.  As described above, the defendant is currently serving a sentence related to his membership in two websites dedicated to the distribution and advertisement of child pornography. He sought out the company of these like-minded offenders in a forum located in the dark depths of the Internet.  The Tor network is specifically used in order to prevent someone attempting to monitor an Internet connection from learning what sites a user visits and preventing the sites from learning the user's physical location.  The defendant not only signed up as a member of the websites, but regularly contributed to the content, including discussing the exploitive material.  He encouraged others on the website to stay "safe".  While the defendant admitted that he registered for the two websites described in the plea agreement, his computer also reflected notes which contained the true name and web address of other Tor network websites known to the devoted to the distribution and advertisement of child pornography.  PA at 21.  He admitted to collecting child pornography "since the 90's".  *Id.* at 16.  While the defendant attributes the statement regarding the length of his collecting history on the forum to be "puffery," there is no question based on the above-

described record that the defendant utilized computers to commit the crime for which he was convicted and was technologically savvy.  Def. Mot. to Mod. SR Cond. at 7.

The defendant's history and characteristics also call for computer monitoring.  As noted above, the defendant submitted a "Offense Specific Evaluation" in advance of his sentencing in this case.  ECF #27-1.  The evaluation provided the evaluator's recommendations regarding monitoring of computer activity.  *Id.* at 16.

While Special Conditions of Supervision 4 and 6 place limitations on the defendant's use of computers, the limitations do not prevent the defendant "from using computers and Internet access devices for any reason unless the probation office, in its unfettered discretion, chooses to lift the ban."  *United States v. Blair*, 933 F.3d 1271 (10th Cir. 2019).  Therefore, the computer monitoring conditions, as revised post-*Blair*, do not impose a greater deprivation of liberty than is reasonably necessary given the facts of the case.

Specifically, regarding keystroke monitoring, the Ninth Circuit acknowledged that while keystroke monitoring may not always be appropriate, in the case of a "sophisticated computer user who had the knowledge, software, and experience to avoid detection of more criminal misuse of his computer," keystroke monitoring was "reasonably related to the specific characteristics of [the defendant's] offense and individual characteristics" and "the need to protect the public".  *United States v. Dolivek*, 510 Fed.Appx. 573 at 574 (9th Cir. 2013) (unpublished). Imposition of keystroke logging

is likewise appropriate in this case given the defendant's technological savvy and the urging of others to stay "safe" online.

Additionally, limitations on the use of computers are recommended for individuals convicted of sex offenses by the U.S. Sentencing Commission.  U.S.S.G. § 5D1.3(d)(7). Specifically, as part of the "Special Conditions (Policy Statement)", the advisory sentencing guidelines recommend "[a] condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items."  *Id.*  This condition is recommended in combination with "[a] condition requiring the defendant to submit to a search, at any time, with or without a warrant, and by any law enforcement or probation office, of the defendant's person and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects upon reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the defendant, or by any probation officer in the lawful discharge of the officer's supervision functions."  *Id.*

The government's position is that there is ample evidence in the record to support computer monitoring, including keystroke monitoring.  The nature and circumstances of the case are the same as when the defendant's sentence was imposed in January 2020.  The history and characteristics of the defendant are the same as when sentence was imposed.  There were no objections to Special Conditions 4 or 6 at that time.  Device monitoring involves no greater deprivation of liberty than

necessary to ensure the safety of the community. Therefore, the defendant's motion to modify these conditions should be denied.

### C.  Special Conditions 7-11:  Financial Conditions.

U.S. Probation has confirmed that the defendant paid his financial obligations as of January 23, 2020 and recommends that Special Conditions 7-11 be removed.  The government joins U.S. Probation in this recommendation.

### <u>CONCLUSION</u>

The government respectfully requests that the Court deny the defendant's motion in part, in that it deny the defendant's motion to modify Special Conditions 1, 4, and 6 and grant the motion in part, in that it grant defendant's motion to modify Special Conditions 7-11.

COLE FINEGAN
United States Attorney

By:    *s/ Alecia L. Riewerts*
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: Alecia.Riewerts@usdoj.gov
Attorney for Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of March, 2022, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO MODIFY SUPERVISED RELEASE CONDITIONS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following addresses:

> Wadi F. Muhaisen
> wadi@muhaisenlaw.com
>
> Douglas Ivan Richards
> doug@richardscarrington.com

Additionally, I hereby certify that due to the hour of this filing, defendant Joel Thomas will be sent a copy of this filing via United States Postal Service on March 26, 2022, at the following address:

> Joel Thomas
> Federal Correctional Institution
> 9595 W. Quincy Avenue
> Littleton, CO 80123

> By: _s/ Alecia L. Riewerts_
> Assistant U.S. Attorney
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> Telephone: 303-454-0100
> E-mail: Alecia.Riewerts@usdoj.gov
> Attorney for Government